This is a state appeal from an order suppressing evidence and quashing a DUI arrest made by a city police officer who is outside his jurisdiction. The basis of the order was that the officer had used a radar gun. However, either the use of the radar gun was permissible because the officer was assisting in a local law enforcement initiative or the use of the radar gun was irrelevant because the officer independently perceived that the defendant was cheating before using the radar gun. In all, there are three statutes under which this court can reverse and remand the trial. The facts officer, Dan Strouch, was a City of Robinson police officer on duty on the Sunday before Labor Day, a holiday weekend, as part of the Crawford County DUI Task Force patrolling on a county road. He saw the defendant's truck. He could tell in that moment that it was speeding. He testified that that's why he turned on his radar detector and clocked the defendant traveling 11 miles over the speed limit. The officer turned his car and saw the truck leaving and driving on the wrong side of the road, stopped him, discovered that he was intoxicated. A Crawford County deputy arrived in time to watch the defendant fail the field sobriety test. He was arrested and eventually charged with aggravated DUI, sick for subsequent offense, class X felony. Under 725 ILCS 5-107-4A-3 sub 3, an officer outside his jurisdiction and on duty has the same powers as he has within his jurisdiction, such as the power to use the radar gun, if he is assisting another law enforcement agency. Now, this is an argument, now the existence of this statute and its applicability here was not raised low. People are arguing a plain error under the second prong of people versus parent. This is really an extraordinary record that's before the court. The judge asked, both at the suppression hearing and at the hearing on the state's motion to reconsider his ruling, whether any statute permitted the officer to be patrolling outside his jurisdiction and use a radar gun. And the state answered at both of those hearings that no such statute existed. The defense counsel also gave a similar answer at one of the hearings. The judge instinctively knew that that answer didn't make sense. That's why he asked the question a second time, I think, at the second hearing. So both the state and the defense and the judge were mistaken as to the applicable law. And the judge's rulings were based on that mistake. Again, the record is extraordinary in that it shows that. The judge's ruling on the suppression motion stated that the officer was outside his jurisdiction and he cannot rely on his radar gun and no exceptions exist in the current law. That's what the judge said at the ruling. In the ruling on the suppression motion, or sorry, the motion to reconsider, the judge elaborated that there was no authority cited giving the officer the authority to be in active patrol outside his jurisdiction. However, such authority exists. The statute applies here. And the record objectively proves that everyone in that courtroom was mistaken as to the presence of this statute. And such a mistake threatens the integrity of the judicial system. And it's notable that the defendant on appeal does not argue that this statute would not apply to a city police officer who is assisting in a countywide law enforcement initiative. His argument is only that the record in this case is inconclusive as to whether that's what Officer Strauch was doing, even though Officer Strauch testified, and his testimony is unrebutted, that he was working on that day, quote, as part of the Crawford County DUI task force. In the alternative to the people's plain error argument, it's people's contention that the use of the radar gun was irrelevant because Officer Strauch perceived that the defendant was speeding before he used the radar gun. And where this is the case, the use of a radar gun does not invalidate an extraterritorial arrest. An officer may use, sorry, may make an extraterritorial citizen's arrest under Section 5-107-3 if he obtains probable cause to do so by using his unaided senses, such as sight or smell, as long as he does not use police power like a radar gun to obtain probable cause for an arrest. And here Officer Strauch testified that he could tell that the defendant's truck not just was going at a high rate of speed, but was speeding. And again, he said, that's why I activated the radar gun. And this fact is what distinguishes this case from the cases of Lahr and Kervouletis, both of which involve facts where the record did not indicate whether the officer could independently tell that the defendant's vehicle was speeding before he activated the radar gun. The record showed reliance on the radar gun to obtain probable cause. The court at Kervouletis elaborated that a different result would have obtained if the officer had testified that he could tell that the car was speeding, and those were the facts of this case. Now, the defendant is claiming that the judge made a factual finding, that Officer Strauch did, in fact, rely on the radar gun to obtain probable cause, not just that he used the gun to clock the precise speed, but that he had independently seen for his training and experience that the truck was going over the posted speed limit. And the People's Reply brief at pages 1 through 8 addressed this contention. Separately, the officer, after he turned to follow the vehicle, saw the vehicle weaving from side to side. Now, this was improper lane usage, and the officer had probable cause to make a citizen's arrest for that improper lane usage. And furthermore, proper use of a radar gun does not invalidate a citizen's arrest for improper lane usage, as the appellate court held in the Gutt case, which is cited in the People's Brief. And then finally, Officer Strauch, when he saw the truck weaving from side to side, that not only provided probable cause to make a citizen's arrest for improper lane usage under the citizen's arrest statute, it also provided a reasonable suspicion of DUI, and Officer Strauch stopped and arrested the defendant for DUI under Section 5-107-4A-3 sub 2. And this was the factual scenario foreseen in the Pervoletis case, in which the court ruled that if an officer had seen the defendant driving erratically or in a manner that would indicate that he was under the influence of alcohol, that the officer could stop and arrest a defendant for DUI under that section. I'd be happy to answer any questions that the court might have. I don't think we have any. Thank you, Counsel. Counsel? I may please report, Counsel. Edwin Anderson for Terry York. At the beginning of your argument, the State noted that the basis of the order was the use of the radar gun. Well, that's the Lahr case, and Lahr controls the outcome of this case. And that's what the judge found. The judge made that finding after making a determination about what version of events he believed, based on what the officer testified to. Six weeks after the traffic stop, the officer at the preliminary hearing said that he saw the vehicle at high rate of speed, used his radar gun, saw it speeding, and then followed it and went on to see other alleged traffic violations and eventually made a stop. Nine weeks later, when a suppression motion was filed raising this issue about the authority of the stop, the officer initially said, I saw the car coming at a high rate of speed, I used my radar gun, I knew it was speeding. And then uncrossed by the prosecution said, I used my radar gun to identify that it was speeding. To apply the Lahr case and find that the radar gun was used in an extraterritorial traffic stop, I don't think we're stretching the bounds to say the judge believed that the officer's initial version of events comports with what really happened. And if the judge is making that kind of determination, he's weighing credibility, and that makes the standard review that this court uses manifest error, not to know it. We contend that the court correctly determined that the city police officer could use his radar gun to catch speeders outside of the city limits. And we think Lahr currently controls on this issue. The state's contentions are that the arrest was proper because there was a DOI task force, and that somehow this brings it under aid and assistance. But we don't know anything about the DOI task force. We don't have any information. The opportunity to make a record that the officer was acting at the direction of the state police, acting at the request of the county sheriff, was there in a certain corner. It wasn't me. What we do know is that he testified that he was working as a city policeman. But he was out in the county outside of his jurisdiction. The state goes on to argue that, but of course they acknowledge that they weighed that. I'm not making the argument to say it's a plain error analysis. But our contention is there's no error, so you can't find plain error. Their next point is that the arrest was proper because the officer saw him paradriving. And this gets to the lar analysis that you can't bootstrap from having improperly established traffic violation with the use of police powers to go on and legitimately see other violations. It all gets suppressed. So he wouldn't be seeing the alleged weaving, the alleged reckless driving, but for having used the radar through lar, none of that is valid and can't be used to stop the arrest. The state side of this people versus gut, G-U-T-T, to kind of counterdict that, are you familiar with that case? And I think I talked about that in my... How would you distinguish it? I don't want to counterdict whatever I said in my... No, that's all right. That's the Lakewood police officer who, Lakewood and Crystal Lake are adjoining communities, and the Lakewood officer sees a person speeding in Crystal Lake using a radar gun and then follows the person into Crystal Lake and sees a traffic violation. The distinguishing point is that in gut, I believe she testifies that she saw the speeding with her own senses. She didn't use her gun first, and so really it isn't directly with lar. It's the... What the state would like to say happened here is that through his own perceptions he sees speeding and then uses his radar gun to verify it. But we know what he testified to at the preliminary hearing. I used my radar gun to see that he was speeding and started following him. So that would be the distinction for that case. The third point they make is that the arrest is a proper resistance arrest. And again, that is based on improper language as being a violation for which a citizen can make a valid arrest. And again, the improper language is just seen but for the speeding that comes out of the improper use of the radar gun. The essential point is that there have to be lines of authority. This is not a difficult situation for the prosecution to resolve in the future, for law enforcement to resolve in the future. We need to know that law enforcement is acting with authority. And if city officers are going to help with DUI patrols in the county, there needs to be some basis shown for their authority. If the state police or the sheriff want to authorize it, it would be little more than a memo, a piece of paper that says, this is the agreement officer, so-and-so is patrolling out in the county with authority. They didn't do that here. And I think the judge's concern with an officer eight miles outside his jurisdiction running radar checks is a valid one. It was valid in the law. It's valid today. And we would ask that your honors defer the order of washing the arrests and suppressing the evidence. Thank you, counsel. Counsel? Well, we disagree about whether there was a finding of fact at this suppression hearing. The record shows that there was not. Of course, at the probable cause hearing some months before, the issue was not the legality of the use of the radar gun. It was the officer's probable cause to suspect DUI, the weaving, seeing the cold open beer on the floorboards once he pulled the truck over, etc. The issue of in what order he did these things, perceived that the truck was speeding and used the radar gun, did not come up. Next, at the suppression hearing, the officer testified on direct that he saw the truck traveling at a high rate of speed and then activated his radar on the cross. When asked for the first time whether he could actually tell that the truck was exceeding the speed limit before he activated the radar, he said, yes, that's why I activated the radar. I don't see that as an inconsistency. I see his testimony on the cross as more specific. And the parties in argument did not argue that Scratch had contradicted himself. Further, the court stated that regardless of whether Scratch had perceived that a defendant was speeding before he activated the radar, the court said, I don't know that that is entirely dispositive. He said that an officer outside his jurisdiction cannot rely on radar and there are no exceptions. In other words, the court explicitly declined to make any kind of finding about in what order Scratch had done anything because it was his belief that under law, even if he had, even if Scratch had independently perceived that the defendant was speeding, he still could not have used his radar gun outside of his jurisdiction. But then when the parties argued this matter again in the state's motion to reconsider, neither the parties nor the judge stated that there had been any kind of a contrary factual finding to the state's argument there. So what we're left with here is Scratch's unrebutted testimony that he perceived the truck speeding based on his nearly 10 years of police experience and at least 400 speeding tickets issued before he activated the radar gun to record the precise speed. Second, the applicability of the section A-3 sub 3, the section that gives the officer the authority to, all the authority that he would have inside his jurisdiction, outside of his jurisdiction if he's assisting another officer, those facts are unrebutted in the record. He stated that he was asked at the suppression hearing, for whom were you working as an officer on September 6, 2009? He answered, as part of the Crawford County DUI task force. We also know from the record that the task force was a state-funded initiative based on a grant that was administered from the Illinois Department of Transportation. The record is sufficient to show that Officer Scratch was not some rogue cop. He was cooperating with county law enforcement officers who again arrived at the scene in time to watch the defendant fail those field sobriety tests. The record is sufficient to show that this statute applies here. And then finally, the defendant argues that but for the use of the radar gun, all that followed, the witnessing of the improper lane usage, etc., would not have occurred. First off, of course, if the use of the radar gun was proper and all that followed, what therefore was also a lawful arrest as envisioned by GUT, which based on the state's argument that there was no factual finding as the state envisions, is not distinguishable. Second, the officer did not claim that he had the right to be out on that road based on the use of his radar. He had as much right to be out on that road as any other motorist when he saw the defendant weaving and committing improper lane usage in reasonable suspicion of DUI. So for those reasons, people would respectfully request that this court reverse and remand for trial. Thank you, counsel. We appreciate the briefs and arguments of counsel. We'll take the case under advisement.